UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:21-CV-197-RJ

BARRY SALZER,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -21] pursuant to Fed. R. Civ. P. 12(c). Claimant Barry Salzer ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. Claimant filed a response to Defendant's motion, [DE-23], and the time for further responsive briefing has expired. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability, DIB, and SSI on October 28, 2015, alleging disability beginning January 1, 2012. (R. 13, 228–35). Both claims were denied initially and upon reconsideration. (R. 13, 73–142). A hearing before Administrative Law Judge

("ALJ") Mark Ziercher was held on February 26, 2018, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 34–72). On September 25, 2018, ALJ Ziercher issued a decision denying Claimant's request for benefits, (R. 10–33), and on August 12, 2019, the Appeals Council denied Claimant's request for review.

On October 16, 2019, Claimant brought an action in this court challenging the Commissioner's final decision denying his claims. (R. 622–32). On June 30, 2020, the court granted the Commissioner's consent motion to remand the case to the Commissioner for further proceedings. (R. 634). On August 12, 2020, the Appeals Council remanded the case to an ALJ to issue a new decision. (R. 639–43).

A second administrative hearing was held by ALJ Rebecca Adams on January 6, 2021, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 570–97). On January 29, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 547–68). The Appeals Council did not assume jurisdiction, and Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large

2

or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance

3

with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges (1) the ALJ erred by failing to perform a proper function-by-function evaluation of Claimant's ability to sit, stand, and walk when assessing the RFC, and (2) the structure of the SSA is constitutionally invalid. Pl.'s Mem. [DE-20] at 8–14.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (R. 553). Next, the ALJ determined Claimant had the following severe impairments: cervical and lumbar spine degenerative disc disease; left shoulder degenerative joint disease; hypertension; depressive disorder; anxiety disorder; and ethanol alcohol use disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 553–55). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 554).

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[1] with the following restrictions:

> avoid concentrated exposure to workplace hazards, such as unprotected heights and open flames; avoid concentrated exposure to extreme heat and vibrating tools and/or surfaces; frequently but not constantly reach overhead, laterally, and forward with the left upper extremity; understand, remember, and carry out instructions for simple, routine tasks not performed at production pace (i.e. not subject to strict deadlines and/or quota requirements); maintain concentration, persistence, or pace for 2-hour intervals for completion of simple, routine tasks, assuming normal 15-minute breaks in the morning and afternoon and a 30-minute lunch break; interact frequently with coworkers and supervisors[]; interact occasionally and casually with the public; and able to adapt to workplace changes if they involve simple work-related decisions.

(R. 555–60). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely consistent with the medical and other evidence. (R. 556).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a yarn machine fixer. (R. 560). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 560–61).

## V. DISCUSSION

### A. The RFC Assessment

Claimant contends the ALJ erred in formulating his RFC by failing to perform a function-by-function evaluation of his ability to sit, stand, and walk. Pl.'s Mem. [DE-20] at 8–12.

The RFC is the capacity an individual possesses despite the limitations caused by

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

The ALJ failed to conduct an explicit function-by-function analysis; thus, the court must look to the ALJ's RFC discussion to determine whether it otherwise provides a sufficient basis for meaningful review. The ALJ acknowledged that Claimant reported pain in his neck, back,

6

and left shoulder with associated weakness in his hands and feet, which limited his ability to lift, sit, stand, walk, and reach with his left shoulder. (R. 556). The ALJ did not discuss the extent of Claimant's alleged limitations, specifically that it was hard for him to walk twenty feet, sit for more than thirty minutes, or stand without experiencing pain and needing to lie down, that he could not hold anything that weighs more than five pounds and could not hold a gallon of milk, and that his pain prevented him from doing housework, cooking, shopping for groceries, or engaging in hobbies. (R. 578–80, 585–88).

The ALJ discussed Claimant's spine and shoulder impairments, including that Claimant reported pain in his neck, shoulder, and back that was aggravated with movement, activities of daily living, walking, and prolonged standing and sitting, and the Claimant was treated with prescription pain medication, pain management, and injection therapy. (R. 556) (citing R. 318–421, 431–32, 440, 461–73, 498–500, 504–15, 809, 813, 819, 821, 824). The ALJ also acknowledged that imaging demonstrated abnormalities in Claimant's left shoulder joint, as well as cervical spine degenerative disc disease with mild to moderate foramen stenosis and lumbar spine degenerative disc disease with mild foramen stenosis. (R. 556) (citing R. 471, 495–96, 545). Finally, the ALJ noted that physical examinations revealed antalgic and slow ambulation, tender left shoulder with limited range of motion, tender cervical and lumbar spine with limited range of motion, and positive straight-leg raise testing. (R. 556) (citing R. 321, 358, 437, 461, 465, 467, 469, 471, 473, 508, 811, 814, 820).

Nevertheless, the ALJ determined that Claimant could perform medium exertional work, which requires up to six hours or standing and walking in an eight-hour day and lifting up to fifty pounds with frequent carrying or lifting of up to twenty-five pounds with a limitation to only frequent reaching with the upper left extremity. (R. 555); 20 C.F.R. §§ 404.1567(c), 416.967(c).

7

The ALJ found that during treatment Claimant reported reduced pain, reduced muscle spasms, and increased ability to perform activities of daily living with medication compliance, (R. 346, 410, 463, 473, 809); that Claimant's mother reported he could complete activities of daily living, including driving, buying groceries, taking care of pets, and feeding himself, (R. 261, 263); and other physical examinations noted normal gait, intact motor strength and sensation, full range of motion of the neck, back, and left shoulder, negative straight-leg raising, no acute distress, and no back tenderness, (R. 319–56, 437, 450, 505, 508, 512, 514, 516, 810, 819). (R. 556–57). The ALJ concluded that equivocal subjective reports and objective findings in the record did not support reducing the RFC below a medium exertion level, (R. 557), and the ALJ also gave substantial weight to the state agency consultant's opinions that Claimant could perform medium work, (R. 558–59).

A review of the treatment records cited by the ALJ indicate that Claimant's symptoms waxed and waned throughout the relevant period. For example, the ALJ cited a treatment note from April 2013 where Claimant reported that Percocet and Valium controlled his chronic pain well, (R. 346), a treatment note from March 2016 stating that Claimant's current medication dose allowed him to do some of his regular activities (although it also noted he was still unable to work), (R. 463), a treatment note from August 2016 stating he was doing well on opioid therapy, he experienced fewer muscle spasms, his increased pain episodes were less frequent, and he was unable to perform ADLs without medication, (R. 473), and a treatment note from July 2019 stating that "nothing other than his Valium or Percocet make [his pain] better," (R. 809). However, records during the same period demonstrate Claimant continued to suffer from chronic pain that limited his functioning and daily activities. In August 2013, Claimant reported that his constant, severe back pain remained unchanged and was exacerbated by movement and

8

prolonged sitting and standing, and he demonstrated decreased range of motion on examination. (R. 357). Other treatment notes from March and April 2016, indicate Claimant's back pain was worsening with pain radiating to his legs, despite taking three to five Percocet a day, and he demonstrated a positive straight leg raise test, decreased range of motion of the neck and lumbar spine, and slow ambulation. (R. 463, 465). The same July 2019 treatment note cited by the ALJ to demonstrate improvement with medication also indicates that Claimant experienced constant pain radiating up and down his back; physical activity, such as sitting and standing for long periods of time worsen his pain; he bathes and clothes himself but it takes longer than the normal person; he cannot cook much or clean his house; and he cannot exercise, walk, or sit for long periods of time. (R. 809). Thus, to the extent the ALJ's decision implies that Claimant experienced permanent or consistent improvement in his symptoms, substantial evidence fails to support that determination.

The ALJ also cited the form report submitted by Claimant's mother indicating he could complete activities of daily living, including driving, buying groceries, taking care of pets, and feeding himself. (R. 261, 263). However, a complete review of the report, completed in December 2015, indicates that Claimant's mother did not live with him and did not spend much time with him, she answered "Don't know" to most all questions regarding his daily functioning, and although she indicated he shopped for groceries and could drive, she did not know how often or for how long. (R. 260–66). "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Finally, the ALJ's reliance on the state agency consultant's opinions that Claimant could perform medium work is not sufficient to support the ALJ's decision in the face of other

9

substantial, contradictory evidence in the record.

It is not apparent from the evidence cited by the ALJ how Claimant can perform medium work that requires up to six hours or standing and walking in an eight-hour day and lifting up to fifty pounds with frequent carrying or lifting of up to twenty-five pounds. The treatment records indicate, and the ALJ's own opinion seems to acknowledge, that despite some relief from pain medication, Claimant continued to suffer from chronic pain that limited his daily activities, and he continued to demonstrate objective findings on examination consistent with his reports of pain. The Fourth Circuit explained in *Woods* that "the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" 888 F.3d at 694 (quoting *Monroe*, 826 F.3d at 189). The ALJ here committed the same error as the ALJ in *Woods* by "summariz[ing] the evidence [s]he found credible, useful, and consistent" but failing to explain how the evidence she summarized led her to conclude that "*based on this evidence*" the claimant could perform medium work. *Id.* Here, in the absence of a function-by-function analysis of Claimant's ability to sit, stand, and walk, the court cannot trace the ALJ's reasoning in the RFC determination, and the error requires remand.

### B. The Constitutionality of the SSA

Claimant contends that the structure of the SSA is unconstitutional and violates the separation of powers because the agency is led by a singular head who serves a longer term than the President and can only be removed from the position for cause; thus, Claimant reasons that Commissioner Andrew Saul's delegation of authority to the ALJ and Appeals Council and his promulgation of regulations were likewise defective, depriving Claimant of a valid administrative adjudicatory process. Pl.' s Mem. [DE-20] at 13–15 (citing *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020)). Defendant concedes that the removal

restriction violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause but contends that Claimant is entitled to no relief because, among other things, he cannot show the restriction actually caused him harm. Def.'s Mem. [DE-22] at 6–21 (citing *Collins v. Yellin*, 141 S. Ct. 1761 (2021)).

In *Seila Law*, the Court held that Congress may not limit the President's removal authority "when it comes to principal officers who, acting alone, wield significant executive power." 140 S. Ct. at 2211. In *Collins*, the Court applied *Seila Law* to hold that the Federal Housing Finance Agency's structure violated the Constitution. 141 S. Ct. at 1783. However, in addressing the appropriate remedy, the Court distinguished a constitutionally defective appointment from a removal, explaining that

> [a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Id.* at 1787. The Court did not foreclose that a showing of harm could be made and provided as examples a President attempting to remove a director but being blocked from doing so by a court for failure to show cause, or a President making a public statement expressing displeasure with actions taken by a director and asserting he would remove the director absent the removal restriction. *Id.* at 1788–89.

Here, Defendant argues first that the ALJ who denied the claim in this case was not appointed by a Commissioner subject to the removal restriction but rather had her appointment ratified by an Acting Commissioner, who was not subject to the removal restriction, such that as a factual matter there is no separation of powers violation, and second that Claimant cannot show the requisite nexus between the alleged harm and the removal restriction. Def.'s Mem. [DE-22]

11

at 7–15. The ALJ's and Appeals Council's decisions were issued after the appointment of former Commissioner Saul, who was subject to the unconstitutional removal provision. However, this does not entitle Claimant to remand because constitutional defects in appointment and removal are distinct. As the Supreme Court explained in *Collins*, if the *appointment* of the agency head is valid "there is no reason to regard any of the actions taken by the [agency] as void." 141 S. Ct. at 1787; *see Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) (finding that because "the ALJ, the members of the Appeals Council, Acting Commissioner Berryhill, and Commissioner Saul all served, at all relevant times, under valid appointments," under *Collins* the agency's actions were not void).

Furthermore, Claimant's argument that an unconstitutional delegation of authority from Commissioner Saul to the ALJ and Appeals Council demonstrates harm lacks merit under *Collins*. *See Harris v. Kijakazi*, No. 21-1853, 2022 WL 2987928, at *3 (4th Cir. July 28, 2022) (rejecting constitutional claim based on *Seila Law* where the claimant failed to demonstrate actual harm). Claimant theorizes a general harm rather than one "particularized to Claimant," *Kaufmann*, 32 F.4th at 850, and courts have found such generalized harms to be insufficient under *Collins*. *See Dixon v. Kijakazi*, No. 4:21-CV-00033-M, 2022 WL 1096424, at *9 (E.D.N.C. Feb. 1, 2022) (finding insufficient showing of harm under *Collins* based on Claimant's argument that the removal provision deprived the Commissioner of the power to take official acts and thus he had no decision making authority to delegate), *report and recommendation adopted*, 2022 WL 1096844 (E.D.N.C. Apr. 12, 2022), *amended and superseded*, 2022 WL 2443463 (E.D.N.C. Apr. 22, 2022); *Reilly v. Kijakazi*, No. 7:20-CV-237-D, 2022 WL 3206179 (E.D.N.C. July 19, 2022), *report and recommendation adopted*, 2022 WL 3162343 (E.D.N.C. Aug. 8, 2022); *Stephens v. Comm'r of Soc. Sec.*, 1:20-CV-00320-WCM, 2022 WL 628540 at

*4–6 (W.D.N.C. Mar. 3, 2022) (citing *Helms v. Comm'r of Sec. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096 (W.D.N.C. Dec. 1, 2021)); *Stubbs v. Kijakazi*, No. 6:20-3606-MGL-KFM, 2022 WL 557479, at *3–4 (D.S.C. Feb. 24, 2022) ("Courts in the Fourth Circuit are in one accord that the allegedly unconstitutional nature of § 902(a)(3), standing alone, is an insufficient basis to require remand.") (citing *Pepper v. Kijakazi*, No. 6:20-CV-4159-CMC, 2022 WL 391577 (D.S.C. Feb. 9, 2022); *Helms*, 2021 WL 5710096; *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021)); *Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-CV-1124, 2021 WL 5834409, at *13 (M.D.N.C. Dec. 9, 2021) (citing *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993 (W.D. Wash. 2021)). Accordingly, because Claimant has failed to demonstrate a sufficient harm from the alleged unconstitutional removal provision, this argument is rejected.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-21] is DENIED, and the case is REMANDED to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

SO ORDERED, this the 23rd day of August 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

13